**PROTECT OUR EAGLES' TREES (POETs), an unincorporated association, Plaintiff,**

v.

**CITY OF LAWRENCE, KANSAS; Lawrence River Plaza Associates; United States Army Corps of Engineers; United States Department of the Interior; United States Environmental Protection Agency, Defendants.**

Civ. A. No. 89–2090–S.

United States District Court, D. Kansas.

Feb. 28, 1989.

Robert V. Eye, Tonganoxie, Kan., for plaintiff.

John W. Lungstrum, Scott J. Bloch, Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan., for Lawrence River Plaza Associates.

Gerald L. Cooley, Allen, Cooley & Allen, Lawrence, Kan., for City of Lawrence, Kan.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

In January and February of each year, flocks of bald eagles winter along the Kansas River in Lawrence, Kansas. Warm water generated by a hydroelectric plant at the Bowersock Dam on the Kansas River remains unfrozen during these coldest times of the year. The bald eagles perch atop cottonwood trees near the dam and feed on fish in the unfrozen parts of the river.

Demolition along the south bank of the Kansas River has begun in order to make way for a new riverfront shopping center. On approximately March 1, 1989, the crews on the site are scheduled to cut down several of the cottonwoods along the south bank.

A group of concerned environmentalists in Lawrence formed the plaintiff organization and brought this suit on February 22, 1989, seeking to prevent the eagles' perch trees from being destroyed. Plaintiff sought relief under the Bald Eagle Protection Act ("BEPA"), 16 U.S.C. § 668 *et seq.*, the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* Before filing suit, plaintiff sent notice to the Environmental Protection Agency ("EPA"), pursuant to the CWA, and to the Secretary of the Interior, pursuant to the ESA.

Plaintiff sought a temporary restraining order enjoining defendant Lawrence Riverfront Plaza Associates, L.P.,[1] from cutting down the cottonwoods in question. Defendants have moved to dismiss plaintiff's complaint. In order to obtain preliminary injunctive relief, plaintiff must establish the following:

(1) Substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). "The touchtone for obtaining such relief is a showing of irreparable harm, coupled with a substantial likelihood of success on the merits." *Community Communications Co., Inc. v. City of Boulder, Colo.*, 660 F.2d 1370, 1375 (10th Cir.), *cert. dismissed*, 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1981). Defendants argued that this court is without jurisdiction under the BEPA, the CWA, and the ESA, and that plaintiff lacks standing

---

1. The defendant developer advises the court that although it was designated in the complaint as "Lawrence River Plaza Associates," its proper name is "Lawrence Riverfront Plaza Associates, L.P."

under the NEPA. Thus, defendants argued plaintiff is unable to show that it would succeed on the merits, and dismissal of the action is in order.

At the conclusion of the hearing held in this matter on February 28, 1989, the court denied plaintiff's motion for a temporary restraining order and granted the motion to dismiss. The court will now state more specifically the bases for its ruling.

■ Plaintiff first sought a writ of mandamus from this court, compelling the Department of the Interior to enforce the BEPA and prevent what it alleges are prohibited acts under that Act. However, there is no language in that Act purporting to create a private right of action against the Department of the Interior. 28 U.S.C. § 1361 grants this court jurisdiction over mandamus actions, but it does not create substantive rights which do not otherwise exist. *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 459 (9th Cir. 1977); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir.1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). Since plaintiff has no private cause of action under the BEPA, the court cannot grant the relief requested.

■ Defendants next contend that plaintiff did not provide proper notice to the EPA as required under the CWA. 33 U.S.

C. § 1365(b)(2) provides that no citizen suit may be commenced "prior to sixty days after the plaintiff has given notice of such action to the Administrator." Plaintiff concedes no notice was provided until sixteen days before this suit was filed. Plaintiff asked for waiver of this sixty-day notice requirement; however, plaintiff provided the court with no authority which would confer upon this court the power to waive the explicit congressional requirement of notice. The notice requirement has been held to be jurisdictional. *Massachusetts v. United States Veterans Admin.*, 541 F.2d 119, 121 (1st Cir.1976). The court is therefore without jurisdiction to consider plaintiff's claim under the CWA.[2]

■ Likewise, plaintiff did not comply with the notice requirements of the ESA, found at 16 U.S.C. § 1540(g). Again, that provision requires that no citizen suit be commenced prior to sixty days after written notice is given to the government. Plaintiff concedes that notice was given only sixteen days before this suit was filed. An exception to the sixty day notice requirement is found at 16 U.S.C. § 1540(g)(2)(C), but that exception is not applicable here.[3]

Since plaintiff has failed to comply with the notice requirement of 16 U.S.C. § 1540(g), this court is without jurisdiction to address its claim under the ESA.[4]

---

2. Despite defendants' concession to the contrary, plaintiff also appears to lack standing. Case law indicates that a plaintiff proceeding under 33 U.S.C. § 1365 may still need to make some minimal showing of an injury in fact, as required by *United States v. SCRAP*, 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). *See, e.g., Fairview Township v. United States Envtl. Protection Agency*, 773 F.2d 517, 523 n. 10 (3d Cir.1985). This would purport with 33 U.S.C. § 1365(g), which defines "citizen" as "a person or persons *having an interest which is or may be adversely affected*." (emphasis added). Only a "citizen" may bring suit. In fact, at the time section 1365 was adopted, a provision was proposed which would have granted standing to any citizen regardless of ability to show an injury in fact, but the proposal was rejected by Congress. *See Fairview Township, id.* Thus, this court lacks jurisdiction over plaintiff's action under the CWA, both because plaintiff failed to comply with the notice requirements, and because plaintiff has failed to allege standing.

3. Section 1540(g)(2)(C) provides that the sixty-day notice period may be waived when an emergency exists and an action is brought pursuant to section 1540(g)(1)(C). An action under subparagraph (1)(C) would address a designation by the Secretary of the Interior of certain species as "endangered." No section 1533 designation is at issue here.

4. Despite defendants' concession to the contrary, standing may not be automatic under the ESA, and a separate, minimal showing of standing may be required. At least one circuit court of appeals has indicated that it believed a showing of injury in fact is required. *See National Audobon Soc'y v. Hester*, 801 F.2d 405, 407 n. 2 (D.C.Cir.1986). Since plaintiff has failed to allege any injury in fact to its members, plaintiff's cause of action under the ESA might not properly be before this court.

■ Finally, defendants contended that plaintiff does not have standing to bring its cause of action under the NEPA. Plaintiff is an unincorporated association, purporting to represent the interests of its individual members. An association may have standing solely as a representative of its members even though the association itself has suffered no injury. *UAW v. Brock*, 477 U.S. 274, 281, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986); *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975). An association has standing if it alleges an injury in fact on the part of its individual members, the interests the association seeks to protect are germane to the association's purposes, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *UAW v. Brock*, 477 U.S. at 282, 106 S.Ct. at 2529 (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

Plaintiff here has satisfied the court that the interests it seeks to protect are germane to its purposes; it alleges in its complaint that it is "an ad hoc group comprised of concerned citizens who seek to protect of [sic] a group of large, well-established trees along a stretch of the Kansas River bank that are frequented by endangered, wintering Bald Eagles from destruction." Plaintiff's Complaint ¶ 9. Further, there has been no contention by any of the parties that participation of the individual members would be required here. However, plaintiff is still required to make a showing that its individual members may suffer an injury in fact. The Supreme Court set out the test for individual standing in the cases *United States v. SCRAP* and *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The Court explained the doctrine as follows:

> Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue…. Where … Congress has authorized public officials to perform certain functions according to law, and has pro-

vided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.

*Id.* at 732, 92 S.Ct. at 1364–65. Judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, as sought by plaintiff here, may be allowed if plaintiff alleges that the challenged action will cause it "injury in fact" and if the injury is to an interest " 'arguably within the zone of interest to be protected or regulated' by the statutes that the agencies were claimed to have violated." *Id.* at 733, 92 S.Ct. at 1365 (citing *Association of Data Processing Service Org. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970)). An "injury in fact" need not necessarily be an economic harm; rather, plaintiff may satisfy the "injury in fact" requirement by showing damage to aesthetic or environmental interests. *United States v. SCRAP*, 412 U.S. at 686, 93 S.Ct. at 2415. Despite this minimal requirement, however, a plaintiff is still required to show that it personally (or its individual members) will suffer the alleged injury. *Id.* at 687, 93 S.Ct. at 2415–16.

Plaintiff here has failed to allege that its individual members will suffer any "injury in fact" if the eagles' perch trees are cut down. It has not alleged that its members enjoy recreational activities (such as birdwatching or photography) involving the eagles, or that the members will suffer any other aesthetic injury. Rather, plaintiff has only alleged that the bald eagles themselves will suffer injury if the trees are cut down. Plaintiff has thus failed to make the required showing that its individual members will suffer injury in fact, as required for associational standing.

■ Even if plaintiff amended its complaint to properly assert its associational standing, the NEPA statutory section under which it seeks relief cannot be applied here. Plaintiff contended that defendant the United States Army Corps of Engineers ("the Corps") failed to properly ana-

lyze the environmental impact of the proposed construction, including an analysis of alternatives to the proposal, in violation of 42 U.S.C. § 4332(2)(C). *See* Plaintiff's Complaint ¶¶ 29–40. However, the language of section 4332(2)(C) indicates that the provision only applies to "major Federal actions significantly affecting the quality of the human environment." The government proffered that the Corps conducted an "environmental assessment" pursuant to 40 C.F.R. § 1508.9 to determine whether the proposed action would have a "significant effect." The Corps determined there would be no significant effect; thus, it did not conduct the analysis to which plaintiff refers in 42 U.S.C. § 4332(2)(C). The decisions reached as a result of the environmental assessment are matters directed to the Corps' judgment or discretion, and mandamus relief is therefore not available. *See Craig v. Colburn,* 414 F.Supp. 185, 193 (D.Kan.1976), *aff'd,* 570 F.2d 916 (10th Cir. 1978). Thus, even if plaintiff had standing, the court is without jurisdiction to consider plaintiff's NEPA claim.

Since plaintiff failed to show it was a likely to succeed on the merits of any of its claims, the court has denied the motion for a temporary restraining order. Further, since each of defendants' contentions in the motion to dismiss has merit, the case was and is hereby dismissed.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for temporary restraining order is denied. IT IS FURTHER ORDERED that defendants' motion to dismiss is granted, and the case is hereby dismissed.